IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| CHRISTOPHER F. CARROLL and DUKE-PATRICK CARROLL,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MAUI; CHAMP K. WRIGHT; ANSELM T. YAZAKI; TRINIDAD ALCONCEL; and JOHN DOES 6-10<br><br>Defendants. | CIVIL NO. 13-00066 DKW-KSC<br><br>**ORDER (1) GRANTING DEFENDANTS COUNTY OF MAUI, CHAMP K. WRIGHT, ANSELM T. YAZAKI, AND TRINIDAD ALCONCEL'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY OF DEFENDANTS CHAMP K. WRIGHT, ANSELM T. YAZAKI, AND TRINIDAD ALCONCEL** |

**ORDER (1) GRANTING DEFENDANTS COUNTY OF MAUI, CHAMP K. WRIGHT, ANSELM T. YAZAKI, AND TRINIDAD ALCONCEL'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY OF DEFENDANTS CHAMP K. WRIGHT, <u>ANSELM T. YAZAKI, AND TRINIDAD ALCONCEL</u>**

**<u>INTRODUCTION</u>**

On February 11, 2011, Christopher Carroll was tased and arrested at his home

by Maui Police Department ("MPD") Officers attempting to serve him with a

temporary restraining order. He alleges that the tasing and arrest were unlawful.

Carroll and his son, Duke-Patrick Carroll ("Duke"), bring claims against MPD Officers Champ K. Wright, Anselm T. Yazaki, Trinidad Alconcel and the County of Maui ("County") for violations of state and federal law.   Because Plaintiffs' claims against the individual Officers are barred by the statute of limitations, and because there are no genuine issues of material fact with respect to the County's liability, Defendants are entitled to summary judgment.   Accordingly, Defendants' motion for summary judgment is GRANTED and Plaintiffs' motion for partial summary judgment is DENIED.

## BACKGROUND

### I.     February 11, 2011 Incident

On February 11, 2011, MPD Sergeant Wright directed Officers Alconcel and Yazaki to serve a temporary restraining order ("TRO") on Carroll at his home in Kihei.   Pls.' Ex. 2 (Wright Dep. Tr.) at 18-20; Pls.' Ex. 5 (1/8/15 Carroll Dep. Tr.) at 17.[1]   The TRO "[o]rdered, pursuant to HRS Section 134-7(f), that Respondent [Carroll] is prohibited from possessing or controlling any firearm, ammunition, firearm permit or license for the duration of this order or extension thereof" and

---

[1] Citations to the parties' exhibits refer to those attached to the concise statements of fact in support of and in opposition to Defendants' motion for summary judgment, *i.e.*, Dkt. No. 97 (Defendants' exhibits) and Dkt. No. 111 (Plaintiffs' exhibits).

instructed Carroll to "immediately turn over all firearms, ammunition, permits and/or licenses to a police officer or to the Maui Police Department[.]"  Pls.' Ex. 1; Defs.' Ex. A (2/10/11 TRO).  The petition attached to the TRO indicated that Carroll had a rifle, registered in his name, located "in the garage on a top shelf on the south side of the wall."  *Id.*

According to Carroll, at about 8:15 am that day, Officers Alconcel, Yazaki, and Wright arrived at his home to serve the TRO.  Carroll answered the door, and was informed by Wright that a TRO was being served upon him and that the Officers were there to recover his firearm.  Carroll contends that he was not physically provided with the TRO nor did he have an opportunity to read the TRO; instead, it was placed face down on a coffee table on the home's deck.  Pls.' Ex. 5 at 20-23. Carroll told Wright that he would not give the weapon to the police, but that he would give it to a friend.  Defs.' Ex. F (Wright Decl.) ¶ 5; Pls.' Ex. 2 at 30-31.

After informing Wright that he would not turn over his firearm to the Officers, Carroll saw Yazaki standing to the right and began yelling at him.  Pls.' Ex. 2 at 31. According to Carroll, he told Yazaki that "if he's going to enforce the law he should know the law first."  Pls.' Ex. 5 at 25.  Carroll states that he did not threaten or use swear words when speaking to Yazaki.  *Id.* at 26.  According to Wright, Carroll yelled at Yazaki, which drew the attention of several neighbors.  Wright then told

Carroll to stop yelling or he would be placed under arrest for disorderly conduct. Defs.' Ex. F ¶ 6. Carroll contends that no member of the public was caused physical inconvenience or alarm by Carroll's interactions with the Officers.

After informing him that he would be arrested for disorderly conduct, Wright reached for Carroll's wrist to place him in custody. Wright contends that Carroll withdrew his hand from Wright's grasp and ran back into the house. Pls.' Ex. 2 at 33; Defs.' Ex. F ¶ 7. Carroll disputes that he ran back into his house, and states that, when his back was turned, he was surrounded by the Officers who grabbed, pushed, shoved, bounced, and pummeled him. Pls.' Ex. 5 at 27-28. Carroll contends that he did not resist, but yelled "get your hands off me" as the Officers began to grab him. Pls.' Ex. 5 at 29-30.

According to Wright, during the course of Carroll resisting arrest and attempting to thwart the Officers' efforts to place him "in custody," Carroll "fell onto the landing right inside of the front door." Defs.' Ex. F ¶ 7. When Wright reached down to pick him up, Carroll kicked both of Wright's legs and his knee. Carroll admits kicking at, but denies making contact with, Wright. Wright claims that he then "backed off and instructed officer Yazaki to taser him" because Carroll was "actively resisting arrest by refusing to comply with my commands and by kicking me." Defs.' Ex. F ¶¶ 7-9. Yazaki deployed the taser, and two prongs

made contact with Carroll's chest.   Carroll felt an electrical penetration in the front of his chest, and then felt a painful convulsion throughout his body.   He fell backwards against the stairs, involuntarily screaming.   Pls.' Ex. 5 at 34-38.

Wright states that, after Carroll was tased, Alconcel attempted to place him in custody.   Carroll, however, continued to struggle and refused to put his arms behind his back.   Despite a warning that he would be tased again, Carroll continued to refuse to put his arms behind his back, and "was tased a second time for resisting commands given to him by police."   Defs.' Ex. F ¶¶ 10-11.   Carroll claims that before being tased the second time, he was lying on the stairs when an officer jumped on top of him and began to "beat him into the staircase" with the hooks and wires still in his chest.   Pls.' Ex. 5 at 39-40.   Carroll says he then attempted to stand up and was tased for the second time.   Pls.' Ex. 5 at 41.

Around that time, Carroll's son Duke, who was sixteen years old at the time of the incident, came up the stairs and attempted to help his father, but was pulled back by one of the Officers.   Duke came up from the lower steps to the landing and told the Officers to leave his father alone.   Wright pulled Duke off of the stair railing and told him to back off.   Defs.' Ex. F ¶¶ 12-13.

Carroll was then handcuffed and escorted to a patrol car, with the hooks and wires of the taser still attached to his chest.   Duke followed the Officers and

demanded to speak to his father. Wright told Duke to lower his voice or he would be arrested for disorderly conduct. Duke continued to yell at Wright, who then placed Duke under arrest for disorderly conduct. According to Wright, in order to handcuff Duke, he placed his upper torso on the hood of the patrol car. Defs.' Ex. F ¶¶ 14-15. Plaintiffs allege that Duke was grabbed by one of the Officers, "slammed into the hood and windshield of a police vehicle, handcuffed, and placed into the back of a police vehicle." Second Am. Compl. ¶ 44. According to Plaintiffs, there is no evidence that Duke was being physically confrontational or aggressive toward any of the Officers, that he posed an immediate threat to their safety, or that he was otherwise trying to help Carroll escape from custody.

Medics were called to the scene to remove the taser prongs from Carroll's chest, but he refused to allow the medics to remove them. Another officer arrived at the scene, and Wright instructed him to remove the taser prongs. Defs.' Ex. F ¶ 16. Carroll and Duke were charged with disorderly conduct, but were not prosecuted. Carroll filed a complaint with the Police Commission on June 14, 2011 naming Alconcel and Yazaki. Defs.' Ex. C.

## II.  Procedural Background

Plaintiffs filed their original complaint on February 8, 2013, naming as defendants the County of Maui, Doe Officer 1, Doe Officer 2, and John Does 3-10.

They then filed a First Amended Complaint on April 7, 2014, naming the County, Wright, Yazaki, Alconcel and MPD Officers Geste Ornellas and Nelson Johnson. On December 5, 2014, the parties stipulated to the dismissal of Ornellas and Johnson. On March 19, 2015, with leave of court, Plaintiffs filed their Second Amended Complaint, which is substantially identical to their First Amended Complaint and does not include any additional claims, factual allegations, or parties. The Second Amended Complaint names as defendants the County, Wright, Yazaki, and Alconcel. *See* Dkt. No. 117.

The Second Amended Complaint alleges the following causes of action: (1) violation of Plaintiffs' Fourth Amendment rights pursuant to 42 U.S.C. § 1983; (2) assault and battery; (3) false imprisonment and/or false arrest; (4) intentional infliction of emotional distress ("IIED"); (5) negligence; (6) negligent training, supervision, and/or discipline; and (7) negligence against superior/agency (*respondeat superior*).

The County and individual Officer Defendants move for summary judgment on all claims against them. Plaintiffs move for partial summary judgment on their Section 1983 claims against Wright, Alconcel and Yazaki.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

Because the Court finds that Plaintiffs' claims against the individual Officers are barred by the statute of limitations, and there are no genuine issues of material fact with respect to Plaintiffs' claims against the County, Defendants' motion is GRANTED and Plaintiffs' motion is DENIED, as discussed below.

## I. Claims Against Officers Wright, Alconcel and Yazaki

### A. Section 1983 Claims Are Barred By the Statute of Limitations

The Court first addresses the Section 1983 claims against the individual Officers. Under the statute –

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding

tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Canatella v. Van De Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007) (applying forum state's statute of limitations and tolling provisions). In Hawaii, a two-year statute of limitations applies. *See* Hawaii Revised Statute ("HRS") § 657-7; *see also Pele Defense Fund v. William Paty*, 73 Haw. 578, 597-98, 837 P.2d 1247, 1260 (1992).

Here, there is no dispute that the original complaint, filed on February 8, 2013, was timely as to the County. The individual Officers, however, were not named in this matter until the filing of the First Amended Complaint on April 7, 2014 – outside of the two-year limitations period. Because Plaintiffs fail to raise genuine issues of fact with respect to relation back under Fed. R. Civ. P. 15(c), or tolling of the statute of limitations under Hawaii law, the Court agrees with Defendants that the individual Officers are entitled to summary judgment.

The original complaint filed within the two-year statute of limitations named the County and Doe Officers. Under Rule 15(c)(1)(C), an amended complaint relates back to the date of the original complaint when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15; *see also Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1202 (9th Cir. 2014) ("Additionally, the second and third requirements must have been fulfilled within 120 days after the original complaint is filed, as prescribed by Federal Rule of Civil Procedure 4(m)."). Plaintiffs' opposition to the County's motion is silent with respect to the application of Rule 15(c). There is no evidence or argument that the individual Officers received timely notice of the action or that they knew or should have known that the action would have been brought against them. Plaintiffs rely instead on the application of Hawaii Rule of Civil Procedure 17(d), which provides in pertinent part –

> (1) When it shall be necessary or proper to make a person a party defendant and the party desiring the inclusion of the person as a party defendant has been unable to ascertain the identity of a defendant, the party desiring the inclusion of the person as a party defendant shall in accordance with the criteria of Rule 11 of these rules set forth in a pleading the person's interest in the action, so much of the identity as is known (and if unknown, a fictitious name shall be used), and shall set forth with specificity all actions already undertaken in a diligent and good-faith effort to ascertain the person's full name and identity.
> . . .

> (3) Any party may, by motion for certification, make the name or identity of the party defendant known to the court within a reasonable time after the moving party knew or should have known the name or identity of the party defendant. The motion shall be supported by affidavit setting forth all facts substantiating the movant's claim that the naming or identification has been made in good faith and with due diligence. When the naming or identification is made by a plaintiff, it shall be made prior to the filing of the pretrial statement by that plaintiff, or within such additional time as the court may allow. The court shall freely grant reasonable extensions of the time in which to name or identify the party defendant to any party exercising due diligence in attempting to ascertain the party defendant's name or identity.
>
> . . .

Hawaii Rule of Civil Procedure 17(d) tolls the statute of limitation with respect to Doe defendants "who cannot be identified prior to the running of the statute." *Wakuya v. Oahu Plumbing & Sheet Metal, Ltd.*, 65 Haw. 592, 596, 656 P.2d 84, 88 (1982); *see also Russell v. Attco, Inc.*, 82 Haw. 461, 466, 923 P.2d 403, 408 (1996) ("HRCP Rule 17(d) provides a method by which the statute of limitations may be tolled relative to a claim against the as-yet unidentified defendants."). Plaintiffs argue that, under the more lenient approach to joining Doe defendants articulated in *Tri–S Corp. v. W. World Ins. Co.*, 110 Haw. 473, 500, 135 P.3d 82, 109 (2006), dismissal is not warranted where their amendment was done "in

good faith, without any malicious or bad faith intent." Pls.' Opp. to County Motion at 8.

The Court disagrees and concludes that Haw. R. Civ. P 17(d) does not toll the statute of limitations under the particular facts and circumstances of this case. First, the undisputed evidence is that Plaintiffs had actual knowledge of the identities of the individual Officers before they filed their original complaint. On June 14, 2011, just a few months after the incident in question and well in advance of the two-year limitations period, Carroll filed a complaint with MPD Internal Affairs, on behalf of himself and Duke, which specifically named Officers Yazaki and Alconcel.[2] *See* Defs.' Ex. C (6/14/11 Internal Affairs Written Complaint). Carroll, moreover, acknowledges that he saw the police reports detailing the February 11, 2011 incident before the original complaint in this case was filed. *See* Defs.' Ex. D (1/8/15 Carroll Dep. Tr.) at 64. The police reports, written by Wright,

---

[2]The Internal Affairs complaint states:

> I can identify Sargent Alconcel because we were having a conversation face to face at the time of the assault. I also can identify Officer Yazaki as I was speaking with him about a previous visit to my home at the moment of my assault. The officer that elbowed me while on my steps can be identified by my son who also can identify Sargent Alconcel. My son may also identify Officer Yazaki as the officer who employed a Taser device that caused substantial injury to me.

Defs.' Ex. C at 1.

Alconcel, and Yazaki, clearly state the identity and role of each Officer in serving the TRO and arresting Plaintiffs. *See* Defs.' Ex. B.

Rule 17(d), however, applies to Doe defendants "who cannot be identified prior to the running of the statute." *Wakuya v. Oahu Plumbing & Sheet Metal, Ltd*., 65 Haw. 592, 596, 656 P.2d 84, 88 (1982); *see also Bailey v. United States*, 289 F. Supp. 2d 1197, 1209 (D. Haw. 2003) ("Accordingly, when 'the only deficiency in the plaintiff's knowledge regarding a cause of action is the identity of other potentially responsible parties, HRCP Rule 17(d) provides a method by which the statute of limitations may be tolled relative to a claim against the as-yet unidentified defendants.' *Russell v. Attco, Inc*., 82 Hawai'i 461, 466, 923 P.2d 403, 408 (1996).").   Here, not only *could* the individual officers have been identified by Plaintiffs, but they *were* in fact identified prior to the running of the statute.   *See Nam Soon Jeon v. 445 Seaside, Inc.,* 288 F.R.D. 492, 497-98 (D. Haw. 2013) ("This is simply not a case in which a plaintiff was unable to ascertain the identity of a defendant" at the time the complaint was filed.   Haw.R.Civ.P. 17(d)(1). Accordingly, the law cited by Plaintiffs does not allow relation back in this case.

*See also* Fed.R.Civ.P. 15(c)(1)(A).").[3]   Even assuming that the individual Officers'

identities were not actually known to Plaintiffs, a reasonable inquiry clearly would

have revealed as much.   *See id.* at 497.

Moreover, the Court cannot say that identification of the Doe Defendants was

"made within a reasonable time," as required by *Tri–S Corp.*, especially considering

Plaintiffs' actual knowledge of their identities before the filing of the original

complaint.   *Cf. Kealoha v. State of Hawaii Dep't of Pub. Safety*, 2010 WL 2076097,

at *6 (D. Haw. May 21, 2010) (finding eleven days between filing of original

complaint and amended complaint naming individual defendants "appears to

comply with HRCP 17(d)(3)'s 'reasonable time' limit for notifying the court and

others of the true identities of the fictitious defendants.").   Here, over a year passed

between the filing of the original complaint on February 8, 2013 and the First

---

[3]The district court in *Nam Soon Jeon* explained that Doe defendants are those whose identities are
"unknown" –

> A plaintiff may use a "Doe" designation in a complaint for a defendant
> whose identity is unknown.   *See* James Wm. Moore, 2 *Moore's Fed.
> Practice*, § 10.02[2][d][i] (3d ed. 2011).   "[T]he court will not permit use
> of the 'Doe' designation for a defendant if the plaintiff's ignorance of the
> defendant's true identity is the result of willful neglect or lack of
> reasonable inquiry.   If reasonable inquiry would have revealed the true
> identity, a pleading naming John Doe defendants will be dismissed."   *Id.*;
> *see also Beckerman v. Weber*, 2007 WL 2301049, *5 (M.D. Pa. Aug. 9,
> 2007)[.]

*Nam Soon Jeon v. 445 Seaside, Inc.*, 288 F.R.D. 492, 497 (D. Haw. 2013).

Amended Complaint on April 7, 2014, and over three years had passed since the February 11, 2011 incident. At oral argument, Plaintiffs posited the notion that this lengthy period was necessary for the exercise of due diligence. Due diligence, however, is something that should be exercised before the filing of a federal court complaint, not after. If there is a reason, in a given case, why that could not be done on a pre-filing basis, or why it could not be completed on a pre-filing basis, it is incumbent on that party to explain why, particularly when invoking the equitable doctrine of tolling. Other than bald assertions of the need to allow for due diligence, that has not occurred here. Nor is there any indication that Plaintiffs have complied with the other requirements of Rule 17(d). *See Bailey*, 289 F. Supp. 2d at 1210 ("Plaintiffs have not shown on this record that they satisfy the requirements of Rule 17(d)(3), which states: Any party may, by motion for certification, make the name or identity of the party defendant known to the court within a reasonable time after the moving party knew or should have known the name or identity of the party defendant. The motion shall be supported by affidavit setting forth all facts substantiating the movant's claim that the naming or identification has been made in good faith and with due diligence. . . . Plaintiffs failed to submit a Rule 17(d)(1) motion at all, much less within a reasonable time[.]").

Accordingly, Plaintiffs fail to establish that Hawaii Rule of Civil Procedure 17(d) tolls the two-year statute of limitations as to the individual Officers. Because Plaintiffs' claims were not filed within the applicable Section 1983 limitations period, Defendants Wright, Alconcel, and Yazaki are entitled to summary judgment as to Count I.[4]

## B. State Law Claims Against Individual Officers Are Also Barred

The remaining claims against the individual Officers are state law tort claims, subject to the same two-year statute of limitations: Count II alleges assault and battery, Count III alleges false imprisonment and/or false arrest, Count IV alleges IIED, and Count V alleges negligence. *See Wheeler v. Hilo Med. Ctr., Inc*., 2010 WL 1711993, at *11 (D. Haw. Apr. 27, 2010) ("Battery, IIED, false imprisonment, and NIED are all tort claims to recover compensation for damage or injury. As a result, these claims are subject to the two-year statute of limitations in HRS § 657-7[.]"). Plaintiffs' state law claims against the individual Officers are therefore barred for the same reasons discussed above with respect to their Section 1983 claims.

_____

[4]Because these claims are time-barred, the Court does not reach the alternative grounds for summary judgment raised by the County's motion, including qualified immunity under federal law, whether there was probable cause to arrest Plaintiffs or whether excessive force was employed.

Even if these claims were timely, the individual Officers have a qualified or conditional privilege with respect to their tortious actions taken in the performance of their public duties. *Towse v. State of Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982)); *see also Medeiros v. Kondo*, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974). There is no dispute here that the Officers' allegedly tortious conduct occurred while performing their public duties as MPD officers. *See* Second Am. Compl. ¶ 74. Government officials, however, are not entitled to immunity when a plaintiff "demonstrate[s] by clear and convincing proof that those officials were stirred by malice and not by an otherwise proper purpose." *Towse*, 64 Haw. at 631, 647 P.2d at 702. Malice is defined as "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart." *Awakuni v. Awana*, 115 Hawai'i 126, 141, 165 P.3d 1027, 1042 (2007) (quoting Black's Law Dictionary 976 (8th ed. 2004)) (internal quotation marks omitted).

Plaintiffs point to nothing in the record that raises a genuine issue of fact as to whether the Officers were motivated by malice. *See Edenfield v. The Estate of Willets*, 2006 WL 1041724, at *12 (D. Haw. April 14, 2006) ("For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice

17

and not by an otherwise proper purpose.   When a public official is motivated by

malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak

of immunity is lost and the official must defend the suit the same as any other

defendant.") (citations omitted, emphasis added).

To be clear, Plaintiffs offer nothing more than the legal conclusion that the

Officers acted with malice, and fall far short of demonstrating malice by clear and

convincing evidence.   The individual MPD Officers are entitled to summary

judgment on all claims against them.

## II.     Claims Against the County

The Court next turns to Plaintiffs' federal and state law claims against the

County, and concludes that the County is entitled to summary judgment.

### A.     Section 1983 Municipal Liability Claim

Count I alleges that the MPD Officers acted in accordance with "statutes,

ordinances, rules, regulations, customs, policies, practices, and/or usages of County

of Maui, State of Hawaii, and/or the Maui Police Department."   Second Am.

Compl. ¶ 54.   Municipalities are legal "persons" subject to Section 1983 liability

under *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978), but a

municipality itself must inflict an injury to be liable.   *Id.* at 694.   Municipalities

may be liable when their acts or omissions inflict constitutional injury and amount to

official policy. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). A plaintiff may establish *Monell* liability by showing at least one of the following:

> (1) conduct pursuant to an official policy inflicted the injury; (2) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (4) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

Here, Plaintiffs do not allege the specific factual or legal basis for their Section 1983 claim against the County in their original or amended complaints. The County's motion establishes that MPD trains its officers on its use of force policies, including the use of tasers and procedures for serving TROs involving the recovery of firearms. *See* Defs.' Ex E (MPD General Order 101.8 – Use of Force); Ex. H (Lt. Okamoto Decl.) at ¶¶ 3-6; Ex. K (MPD General Order 409.1 – TROs Involving Recovery of Firearms). Plaintiffs do not challenge the County's articulated policies as unconstitutional. *See* Pls.' Opp. to County Motion at 19-20. Rather, they argue that the Officers should have applied for a search warrant prior to seizing Carroll's firearm. As a preliminary matter, the Court notes that none of the

19

three complaints filed by Plaintiffs includes a claim for unlawful seizure of the firearm.

Plaintiffs appear to argue that the declaration of Lieutenant Gregg Okamoto, which summarizes General Order 409.1, reflects an unconstitutional policy or custom because he "misstates the mandates of HRS 134-7(f)," with regard to the service of TROs. Pls.' Opp. to County Motion at 20. Plaintiffs' tortured reading of Okamoto's declaration, however, does not raise a genuine issue of material fact for purposes of their *Monell* claim.[5] They establish no County-wide policy or practice that resulted in any violation of a constitutional right alleged in their complaints.

In any event, even assuming Plaintiffs' version of the facts is true, they fail to raise a genuine issue of fact on this claim. In the face of the County's formal policies on the use of force, Plaintiffs fall short of establishing any "informal policy" or "widespread practices" sufficient to survive summary judgment. *See Hunter v.*

---

[5]Okamoto's declaration states: "General Order 409.1(IV)(F) provides the detailed procedure for service of an order of protection. When a respondent has a firearm and refuses to surrender it, the respondent should be arrested for violation of an order of protection and a search warrant obtained, if necessary." Defs.' Ex. H, ¶ 6. Plaintiffs appear to contend that the clause ''if necessary'' at the end of Okamoto's summary of the policy means that the County does not comply with HRS § 134-7(f), which states that "when a police officer is unable to locate the firearms and ammunition . . . the police officer shall apply to the court for a search warrant pursuant to chapter 803 for the limited purpose of seizing the firearm and ammunition."

*Cnty. of Sacramento*, 652 F.3d 1225, 1234 (9th Cir. 2011). Instead, they equivocally argue that "the policies, training and disciplinary actions may be lacking and led to Defendant Officers who did not follow reasonable enforcement procedures." Pls.' Opp. to County Motion at 21. This is insufficient to survive summary judgment.

According to Plaintiffs' police practices expert, Retired Major Louis Souza:

> (i) it is not clear that the TRO was a search warrant that authorized the Officers to subsequently search Mr. Carroll's home and seize the shotgun; (ii) the internal affairs investigation of Defendant Officers did not address the issue that responding Defendant Officers wrongly charged Mr. Carroll or Duke; (iii) the failure to address Defendant Officers incorrect charging of Plaintiffs "underscores the insufficiency of the investigation conducted by MPD Internal Affairs and raises the issue of whether any subsequent training or disciplinary actions were taken to correct" Officers' conduct; and (iv) concluded that the Defendant Officers "did not follow reasonable enforcement procedures."

Pls.' Opp. to County Motion at 20-21 (citations omitted).

With respect to the first issue -- whether the TRO was a search warrant that authorized the Officers to seize Carroll's shotgun -- Plaintiffs fail to establish any policy or custom of MPD Officers conducting unlawful searches based on this single incident. And as discussed previously, not one of the three complaints filed by Plaintiffs in this action alleges an unlawful seizure.

As to the second opinion regarding the internal affairs investigation, Plaintiffs again show no County policy, or even an underlying constitutional violation. To the extent Plaintiffs may be asserting that the result of the internal affairs investigation and MPD's failure to discipline the Officers shows "ratification" by a policy-maker, they fail to show "the decision was the product of a conscious, affirmative choice to ratify the conduct in question. Such a ratification 'could be tantamount to the announcement or confirmation of a policy for purposes of *Monell*.'" *Edenfield*, 2006 WL 1041724, at \*16 (quoting *Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003), *reversed on other grounds by Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam)). *See also Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (ratification requires proof of a policymaker's knowledge of the alleged constitutional violation); *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (ratification requires an adoption and express approval of the acts of others who caused the constitutional violation); *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (an official policymaker must "make a deliberate choice from among various alternatives to follow a particular course of action").

Plaintiffs likewise fall short with respect to the portion of Souza's third opinion that subsequent training was necessary to correct the Officers' conduct.

They point to no evidence of deliberate indifference necessary to maintain a claim

for failure to train:

> Liability may only be imposed for failure to train when that failure "reflects a 'deliberate' or 'conscious' choice by a municipality." *Canton*, 489 U.S. at 389, 109 S.Ct. 1197. Further, failure to train claims "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id*. at 392, 109 S.Ct. 1197. Given these restrictions on municipal liability, a plaintiff seeking to impose liability against a county for failure to train must show: "(1) [A]n inadequate training program, (2) deliberate indifference on the part of the County in adequately training its law enforcement officers, and (3) [that] the inadequate training 'actually caused' a deprivation of [a plaintiff's] constitutional rights." *Merritt v. County of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989); *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002) (setting forth a similar three-prong test) (citation omitted).

*Wereb v. Maui Cnty.*, 727 F. Supp. 2d 898, 921 (D. Haw. 2010) (footnote omitted).

Plaintiffs raise no genuine issue of material fact that County policymakers had actual

or constructive notice that its officer training was deficient. *See also Connick v.

Thompson*, 131 U.S. 1350, 1360 (2011) ("A pattern of similar constitutional

violations by untrained employees is 'ordinarily necessary' to demonstrate

deliberate indifference for purposes of failure to train."). As discussed previously,

there are no allegations or evidence of a program-wide deficiency or omission in

MPD's training program. Plaintiffs' police expert opinion fails to raise a genuine

issue of material fact.   Without anything more, Plaintiffs fail to identify a genuine dispute of material fact on their unspecified claim that the County has a deficient training program or that the County demonstrated deliberate indifference to the training deficiencies.

Fourth, Plaintiffs' expert opines that the MPD Officers "did not follow reasonable enforcement procedures."   This conclusory opinion, however, fails to establish an unconstitutional policy or custom.   Here, Plaintiffs cannot show the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989), overruled on other grounds by *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008)).   Plaintiffs point to nothing beyond this single incident to suggest an unconstitutional policy or custom of unreasonable enforcement procedures.   Without anything more, Plaintiffs fail to identify a genuine dispute of material fact on their vaguely alleged municipal liability against the County.

In light of the above, Plaintiffs' Section 1983 claim against the County must fail and the County is entitled to summary judgment on Count I.

## B. State Law Claims Against the County

### 1. Negligent Training, Supervision, and/or Discipline

Count VI alleges that the County negligently failed to train, supervise, and/or discipline Officers Wright, Yazaki, and Alconcel. To state a claim for negligent supervision or failure to control under Hawai'i law, a plaintiff must allege that the employees who committed the wrongful acts were acting outside the scope of their employment. *Pulawa v. GTE Hawaiian Tel*, 112 Hawai'i 3, 18, 143 P.3d 1205, 1220 (2006). Here, however, Plaintiffs allege in another Count that the Officers actions "were committed negligently within the scope of their employment by Defendant County of Maui as Maui police officers." Second Am. Compl. ¶ 74. Because Plaintiffs fail to allege that the Officers were acting outside the scope of their employment, they fail to state a claim for negligent supervision.

Their claims for negligent training and discipline also fall short on summary judgment. Plaintiffs' opposition is largely silent on these state law claims. Their police practices expert report does not establish any actual deficiencies, merely raising a question in a brief paragraph: "The failure to address this obvious problem with the way the Officers conducted the arrest underscores the insufficiency of the investigation conducted by MPD Internal Affairs and raises the issue of whether any subsequent training or disciplinary actions were taken to correct the responding

25

Officers' conduct." Pls.' Ex. 9 (Expert Witness Disclosure – 9/15/14 Souza Report) at 3. There is no discussion beyond this speculation that speaks to an actual failure to train or discipline. Plaintiffs' offer no other evidence or argument raising any question of fact with respect to this claim. Accordingly, the County is entitled to summary judgment on Count VI.

### 2. *Respondeat Superior* Claim

Plaintiffs' remaining claim against the County, Count VII, alleging *respondeat superior* liability, likewise fails. To recover under a *respondeat superior* theory, Plaintiffs must establish: (1) a negligent act of the employee (breach of a duty that is the legal cause of injury) (2) that occurred within the employee's scope of employment. *Henderson v. Professional Coatings Corp.*, 72 Haw. 387, 391-92, 819 P.2d 84 (1991). Plaintiffs fail to do so here. Because the Court concludes that the claims against the individual Officers are time-barred and that the Officers are entitled to the state law qualified/conditional privilege, the Officers' employer, the County, cannot be liable under the doctrine of *respondeat superior*. *See McCormack v. City & Cnty. of Honolulu*, 2014 WL 692867, at *3 (D. Haw. Feb. 20, 2014) (internal citations and quotations omitted) (dismissing *respondeat superior* claims against City where no tort claims remained against individual officers). Accordingly, the County is entitled to summary judgment on this claim.

## III. <u>Summary</u>

Defendants' motion for summary judgment is GRANTED as to all claims. Plaintiffs' motion for partial summary judgment is DENIED.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendants County of Maui, Champ K. Wright, Anselm T. Yazaki, and Trinidad Alconcel's Motion for Summary Judgment, and DENIES Plaintiffs' Motion for Partial Summary Judgment as to Liability of Defendants Champ K. Wright, Anselm T. Yazaki, and Trinidad Alconcel. There being no remaining claims in this matter, the Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: March 31, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

-------------------------------------------------------------------------------------------------
*Christopher F. Carroll, et al. v. County of Maui, et al.;* Civil No. 13-00066 DKW-KSC;
**ORDER (1) GRANTING DEFENDANTS COUNTY OF MAUI, CHAMP K. WRIGHT,
ANSELM T. YAZAKI, AND TRINIDAD ALCONCEL'S MOTION FOR SUMMARY
JUDGMENT, AND (2) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO LIABILITY OF DEFENDANTS CHAMP K. WRIGHT, ANSELM T.
YAZAKI, AND TRINIDAD ALCONCEL**